UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

**DAVID A. STEBBINS**                                                           **APPELLANT**

vs.                                             Civ. No. 13-1105

**UNIVERSITY OF ARKANSAS**                                   **APPELLEES**

<u>**APPELLEE BRIEF**</u>

Comes now, *pro se* Appellant David Stebbins, who hereby submits the following brief in support of my appeal.

## LACK OF TRANSCRIPT

Before I begin the actual brief itself, allow me to address the elephant in the room: There is no trial transcript. As stated before, I cannot afford one, and when I moved, both in the district court and the appellate court, for a transcript at government expense, the motions were denied, both times, without explanation. As stated in the Response to the Clerks' Show Cause Order, I consider this to be evidence that the courts are under Appellee's thumb.

## MERGER OF SECTIONS

As a *pro se* Appellant, I am entitled to some leniency regarding the structure of pleadings. See Case No.10-3697 in this Court. Therefore, for convenience sake, the "Statement of Facts" and "Statement of the Case" sections will be merged together into one section, due to their similarity, as will the "Summary of Issues" and "Summary of Argument" sections. If the Court finds this to be unsatisfactory, feel free to strike the briefing and demand a "correct" one.

That being said, let us begin the actual briefing...

Appellate Case: 13-1105 Page: 1 Date Filed: 04/09/2013 Entry ID: 4022212
Appellate Case: 13-1105 Page: 1 Date Filed: 04/07/2013 Entry ID: 4022475 RESTRICTED

# TABLE OF CONTENTS

| | | |
|---|---|---|
| 1. | Lack of Transcript | 1 |
| 2. | Merger of Sections | 1 |
| 3. | Table of Contents | 2 |
| 4. | Table of Authorities | 4 |
| 5. | Jurisdictional Statement | 5 |
| | A) District Court Jurisdiction. | 5 |
| | B) Appellate Court Jurisdiction. | 5 |
| | C) Timeliness of Appeal. | 5 |
| | D) Finality of Judgment. | 5 |
| 6. | Statement of the Case and Statement of Facts | 6 |
| 7. | Statement of Issues and Summary of Argument | 11 |
| 8. | Argument | 12 |
| | A) The District Court erred in denying Plaintiff's motion to confirm arbitration award. | 12 |
| | B) The District Court erred in denying Plaintiff's motions to compel discovery. | 12 |
| | C) The District Court erred in denying Plaintiff's motions *in limine*. | 13 |
| | D) The District Court erred in allowing the use of leading questions during Defendant's direct examinations, despite Plaintiff's objections to them. | 14 |
| | E) The District Court erred in overruling Plaintiff's objections to witnesses' insufficient and evasive answers. | 14 |
| | F) The District Court erred in failing to consider Plaintiff's intermittent explosive disorder. | 15 |

Page 2

Appellate Case: 13-1105   Page: 2   Date Filed: 04/09/2013 Entry ID: 4022212
Appellate Case: 13-1105 - Page: 2 - Date Filed: 04/07/2013 Entry ID: 4022475 RESTRICTED

| | | |
|---|---|---|
| G) | The District Court erred when it failed to incorporate the precedent of *Knight v. State*, 758 SW 2d 12, 14 (1988). | 16 |
| H) | The District Court erred in considering the statements made at the AUJ hearing as "uncontestable" admissions. | 17 |
| I) | The District Court erred in failing to consider the reasonable accommodations provided by North Arkansas College. | 18 |
| J) | The District Court erred in holding that a direct threat renders Plaintiff not "otherwise qualified." | 18 |
| K) | The District Court erred in considering events regarding mere "difficulties" with dorm staff and teachers as evidence that it would ever go beyond mere difficulties. | 19 |
| L) | The District Court erred in holding that merely using swear words is sufficient to constitute a threat. | 19 |
| M) | Judge Hendren clearly was not even *paying attention* at trial; thus, the case should be reversed for evidence of bias. | 19 |

9. Conclusion — 20

10. Certificate of Service — 20

# TABLE OF AUTHORITIES

**Case Law**                                                                   **Page**

*EEOC v. Wal-Mart Stores, Inc.*,                                               18
477 F. 3d 561, 572 (8th Cir. 2007)

*Gonzaga University v. Doe*,                                                   7,13
536 U.S. 273 (2002)

*Knight v. State*,                                                             17
758 SW 2d 12, 14 (1988)

*Michael Smith v. State of Arkansas*,                                          17
757 SW 2d 554, 556 (1988)

**Rules & Statutes**                                                           **Page**

28 USC § 1291                                                                  5

28 USC § 1294(1)                                                               5

28 USC § 1331                                                                  5

28 USC § 1391(b)(1)                                                            5

28 USC § 1391(b)(2)                                                            5

29 USC § 701                                                                   5

AR Local Rule 7.2(f)                                                           7,12

Family Educational Rights & Privacy Act                                        7,13

Fed. R. App. P. 4(a)(1)(A)                                                     5

Fed. R. App. P. 28(a)(4)                                                       5

First Amendment                                                                19

Page 4

Appellate Case: 13-1105    Page: 4    Date Filed: 04/09/2013 Entry ID: 4022475
Appellate Case: 13-1105    Page: 4    Date Filed: 04/09/2013 Entry ID: 4022475 RESTRICTED

# JURISDICTIONAL STATEMENT

Pursuant to Fed. R. App. P. 28(a)(4), here is the requisite jurisdictional statement:

### District Court Jurisdiction.

Plaintiff has filed suit over a violation of Section 504 of the Rehabilitation Act (codified as 29 USC § 701). Thus, the United States District Court for the Western District of Arkansas ("the District Court") possessed jurisdiction pursuant to 28 USC § 1331. Venue was proper under 28 USC § 1391(b)(1) and 28 USC § 1391(b)(2).

### Appellate Court Jurisdiction.

This Court has personal jurisdiction to review from the District Court pursuant to 28 USC § 1294(1). Its subject-matter jurisdiction is pursuant to 28 USC § 1291.

### Timeliness of Appeal.

The judgment was entered on December 28, 2012. A Notice of Appeal was filed on January 2, 2013, well within the time limit imposed by Fed. R. App. P. 4(a)(1)(A).

### Finality of Judgment.

A judgment was entered on December 28, 2012. This Court currently stands in review of said final judgment.

## STATEMENT OF THE CASE AND STATEMENT OF FACTS

1. On December 5, 2012, Plaintiff, who was a student at the University of Arkansas at the time, was evicted from Defendant's campus, officially for making a terroristic threat. Plaintiff, who was attempting to secure access to anger management medications which he believed to treat "irritability" in his Asperger Syndrome, panicked when he was unable to obtain them, and warned one of Defendant's staff members of the dangers that potentially could ensue if he did not receive them; Plaintiff had, at the time, not been off the medications for as long as he could remember, and did not know if he would turn psychotic without them, and knew that he had to have them at all costs so that no one could get hurt.

2. In January of 2008, Plaintiff submitted to a hearing to the Defndant's All University Judicial board (or "AUJ" for short). Despite possessing no evidence (at least, no evidence presented at trial in the District Court) that Plaintiff acted with an *intent* to terrorize, or that the access to anger management medications would have been insufficient to eliminate the threat, or that the reasonable accommodation of patience and understanding with Plaintiff's words and actions would eliminate any *atmosphere* of threat, the AUJ decided to suspend Plaintiff indefinitely, until a series of events outside of Plaintiff's direct control (namely, that someone else had to become satisfied that the events resulting in the suspension would never, under any circumstances, happen again, even if I *wanted* them to happen again) were satisfied. Since the conditions imposed were impossible to meet, the suspension was, effectively, an expulsion.

3. In June of 2010, Plaintiff submitted an email to Defendant's Chancellor, demanding his reinstatement. Despite Plaintiff not actually threatening to do anything except sue, Defendant nonetheless considered it a threat to the Chancellor's safety, and banned Plaintiff from campus.

This case ensued.

4.  Because the case was taking an awfully long time to move forward, Plaintiff attempted to expedite the case by introducing a motion to confirm arbitration award. The motion was denied on the grounds that the acceptance method for this contract was invalid. An appeal was filed, but was dismissed as untimely.

5.  Parties began to exchange discovery. Multiple times, Plaintiff filed motions to compel discovery, all of which were denied for various reasons, none of them correct. Examples which come to mind are...

A)  denying a motion to compel where no response thereof was timely filed, despite AR Local Rule 7.2(f) stating that failure to timely response to any nondispositive motion shall be an adequate basis for granting the relief sought in said motion.

B)  denying a motion for sanctions related to a deposition in which the deposed witnesses consistently and maliciously failed to give straight answers to Plaintiff's cross-examination questions, simply for Plaintiff's failure to include a brief in his motion.

6.  Prior to and during trial, Plaintiff filed a few motions *in limine*, attempting to bar the introduction of various evidences, namely the testimony of Carla Brown as privileged under the Doctor-Patient Privilege. The District Court denied this on the grounds that the Family Educational Rights & Privacy Act allows the use of "student records" in court proceedings, conveniently ignoring the precedent of *Gonzaga University v. Doe*, 536 U.S. 273 (2002).

7.  During trial, the Defense Attorney T. Scott Varady consistently asked leading questions of his own witnesses. Plaintiff objected at first, but Judge Hendren simply replied "that's fine." Plaintiff stopped objecting to the leading questions, under fear of being sanctioned for repeatedly

making the same objection over and over despite it being overruled. It was not until Day 2 of the trial that Plaintiff mustered the courage to raise the objection again; only this time, the Judge sustained it.

8. This, of course, begs a pretty big question: Why wasn't Judge Hendren *paying attention* at trial?! There were, in fact, several instances where Judge Hendren engaged in activity that clearly demonstrated a lack of attention to the things going on at trial. A few cases which come immediately to mind are...

    A)    As stated before, he overruled an objection for asking leading questions during direct examination, but later sustained an identical one. Clearly, he did not hear the first objection, and yet, rather than ask for the objection to be repeated, he simply assumed that the objection *must* lack merit. In other words, he already had his mind made up about the objection before Plaintiff even raised it.

    B)    When Plaintiff asked his father, during cross-examination, why he does not have any proof of his testimony, besides his word (e.g. medical documentation), the Defense Attorney objected to the question on the grounds of lack of relevance. To issue a ruling on the objection, Judge Hendren actually asked Plaintiff *what the question was*, clearing showing that he was not actually listening the first time the question was asked.

    C)    Both Plaintiff and Plaintiff's mother testified that North Arkansas College in Harrison provided the reasonable accommodations Plaintiff requested (the two spoken of in Paragraph #2 of this Statement; access to medications and patience and understanding in the absence of proof of *intent* to terrorize or offend), and were successful in eliminating any atmosphere of threat that may or may not have otherwise existed. Upon request, an affidavit will be

Appellate Case: 13-1105 Page: 8 Date Filed: 04/09/2013 Entry ID: 4022475 RESTRICTED
Appellate Case: 13-1105 Page: 8 Date Filed: 04/09/2013 Entry ID: 4022475 RESTRICTED

provided from Plaintiff's mother, claiming that she did, indeed, testify to it. However, in the closing arguments, when Plaintiff argued "If I'm a threat, why are [the Defendants] the only ones who think so," Judge Hendren claimed that this evidence was not introduced at trial, so he would not be allowed to consider it.

D) When directly examining Plaintiff's mother regarding Plaintiff's then-pending criminal charges, Plaintiff asked his mother if she believed him to be guilty thereof. When she replied in the affirmative, Plaintiff sought leave from the Court to treat her as a hostile witness – and ask leading questions accordingly – for that specific line of questioning. Judge Hendren denied the motion, claiming that she was being cooperative. Since that line of questioning had not even begun yet, Judge Hendren's argument that she was being cooperative could only make sense if he thought the motion for leave to treat her as hostile applied to the *entire* direct examination, a conclusion he could not have come to if he were actually paying attention to what Plaintiff was moving for. Upon request, Plaintiff will provide an affidavit from his mother verifying the accuracy of these things.

9. Throughout trial, Judge Hendren repeatedly overruled Plaintiff's objections to defense witnesses' non-responsive answers. One of the most glaring of these incidents was when Plaintiff was attempting to get the defense witnesses to testify as to exactly what Plaintiff threatened to do in his email spoken of in Paragraph #2 of this statement, and the witnesses simply proceeded to read out the email itself, rather than identify the threat made.

10. After trial, on December 28, 2012, Judge Hendren ruled in favor of the Defendants, on the following frivolous grounds:

A) Plaintiff admitted at the AUJ hearing that simply sounding threatening is enough to

Page 9

*be* threatening.

B) Posing a direct threat makes the Plaintiff not otherwise qualified.

C) It would be too difficult to provide the reasonable accommodations that Plaintiff requested.

D) The email sent to Chancellor Gearhart in June of 2010 was threatening, even saying that a threat to sue is itself a "terroristic" threat.

11. Judgment was entered simultaneously with, and pursuant to, the memorandum spoken of in Paragraph #10 of this Statement. This appeal ensued.

## STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT

1. The District Court erred in denying Plaintiff's motion to confirm arbitration award.

2. The District Court erred in denying Plaintiff's motions to compel discovery.

3. The District Court erred in denying Plaintiff's motions in limine.

4. The District Court erred in allowing the use of leading questions during Defendant's direct examinations, despite Plaintiff's objections to them.

5. The District Court erred in overruling Plaintiff's objections to witnesses' insufficient and evasive answers.

6. The District Court erred in failing to consider Plaintiff's intermittent explosive disorder.

7. The District Court erred when it failed to incorporate the precedent of Knight v. State, 758 SW 2d 12, 14 (1988).

8. The District Court erred in considering the statements made at the AUJ hearing as "uncontestable" admissions.

9. The District Court erred in failing to consider the reasonable accommodations provided by North Arkansas College.

10. The District Court erred in holding that a direct threat renders Plaintiff not "otherwise qualified."

11. The District Court erred in considering events regarding mere "difficulties" with dorm staff and teachers as evidence that it would ever go beyond mere difficulties.

12. The District Court erred in holding that merely using swear words is sufficient to constitute a threat.

13. The District Court clearly had a bias in this case.

Page 11

Appellate Case: 13-1105   Page: 11   Date Filed: 04/09/2013  Entry ID: 4022212
Appellate Case: 13-1105   Page: 11   Date Filed: 04/07/2013  Entry ID: 4022475 RESTRICTED

# ARGUMENT

For the reasons set forth below, the District Court's decisions should be either reversed or vacated.

**The District Court erred in denying Plaintiff's motion to confirm arbitration award.**

For this point, Plaintiff incorporates the Appellant and Reply Briefings in Case No. 11-2465 of this Court. If Appellee wishes to simply incorporate its own Appellee briefing from the same case, then no further discussion will be necessary.

**The District Court erred in denying Plaintiff's motions to compel discovery.**

One motion to compel discovery was denied, despite the Defendants not filing a timely response to the motion. Under AR Local Rule 7.2(f), this should have entitled Plaintiff to have the motion granted, without further good cause. Judge Hendren, however, claimed that this local rule does not mandate the granting of a motion, but rather, merely allows the option. This is erroneous – even frivolous – on at least two different counts:

1. The local rule uses the word "shall," not "may." Shall, traditionally, means "must."

2. According to his logic, a nondispositive motion must be denied unless the nonmovant responds to it. A nonmovant who has no way of refuting the motion could nonetheless avoid the relief sought in it by just not responding to it. After all, his claim that Local Rule 7.2(f) "only allows the option" clearly rests on the prerequisite assumption that the option would not exist otherwise! This is sheer, utter lunacy.

Judge Hendren's denial of this motion is reviewable *de novo*, since it rests on an interpretation of local rules, which are, quintessentially, laws, the interpretation of which are reviewable *de novo*.

Page 12

Another incident occurred later in the case: When Plaintiff's parents maliciously failed to provide straight answers in their depositions, Plaintiff moved for sanctions, asking the deposition to be rescheduled at their expense. Even though the portion of the deposition transcripts were introduced, showing the deficiencies in the answers, Judge Hendren denied the motion simply for failure to include a brief. He did not *strike* it without prejudice for a technical deficiency; no, he simply denied it flat. This is reviewable for abuse of discretion, and that is exactly what Judge Hendren has committed.

### The District Court erred in denying Plaintiff's motions in limine.

At the end of Day 1 at trial, Plaintiff moved *in limine* to bar the testimony of Carla Brown. The next morning, the Judge denied the motion, claiming that the Family Educational Rights & Privacy Act allowed the evidence to be introduced, notwithstanding the doctor-patient privilege. Because the decision was based on an interpretation of a statute, the issue is reviewable *de novo*.

Despite Defendant's pleas to the contrary, FERPA does not create any substantial rights, for the student or the school alike. FERPA is wholly, entirely, and exclusively a *administrative* law. See *Gonzaga University v. Doe*, 536 U.S. 273 (2002). In other words, FERPA provides no more of an exception to the Rules of Evidence than the laws governing the structure and operation of the Supplemental Nutritional Assistance Program (formerly, and still unofficially, known as "Foo Stamps").

Therefore, the Judgment should be reversed for erroneously allowing inadmissible evidence to be introduced.

### The District Court erred in allowing the use of leading questions during Defendant's direct examinations, despite Plaintiff's objections to them.

As stated in the Statement of Facts and Statement of the Case, the Judge overruled Plaintiff's objection that Defense Counsel was asking his own witnesses leading questions. Most likely, this was caused by Judge Hendren's lack of attention to the trial proceedings (something that we will get into in a minute).

This issue is reviewable *de novo*, since it is based on a declaration of law: That leading questions during direct examinations are allowed. This goes far beyond abuse of discretion; leading questions during direct examinations are either allowed or disallowed; there is no gray area in that aspect.

Therefore, the judgment should be vacated and the case remanded with instructions to disallow leading questions during direct examination.

### The District Court erred in overruling Plaintiff's objections to witnesses' insufficient and evasive answers.

As set forth in Paragraph #9 of the Statement of the Case and Statement of Facts, defense witnesses consistently gave evasive answers to Plaintiff's cross-examination questions. Appellees may argue that Plaintiff simply was not "satisfied" with the answers given, but that is not true.

Keep in mind, there is a reason that the judiciary has the question-and-answer format in the first place. There is a reason witnesses cannot simply tell their story. There is a *reason* that relating the narrative is not allowed.

The reason we have the Q&A format is to minimize the risk of the trier of fact hearing inadmissible evidence. By having a question asked first, the opposing party is given advance

notice of the testimony that is coming up, and has a chance – albeit a split second chance – to object to its introduction. If witnesses were allowed to give testimony that was not requested pursuant to a direct or cross examination, this defeats the whole purpose of even *having* a Q&A format in the first place. Thus, not only is relating the narrative not allowed, but also, giving *more* information than was requested. The latter objection is known as "nothing pending."

Thus, when Plaintiff asks a yes or no question, there is a *reason* he is entitled to a yes or no answer: Anything short of an unambiguous yes or no answer is non-responsive. But anything *beyond* a yes or no answer, and there is nothing pending. An explanation of their answer – so long as it *contains* an unambiguous yes or no answer somewhere inside it – would be acceptable... if it were not for the "nothing pending" objection, the existence of which has just been justified.

Therefore, the judgment should be vacated and the case remanded with instructions to mandate straight answers to all questions.

### The District Court erred in failing to consider Plaintiff's intermittent explosive disorder and panic disorder.

Defendant was diagnosed with Intermittent Explosive Disorder at age 17 by Dr. Robert Ferrel. However, during the cross-examination of Rita Stebbins, she testified that she had no idea that Plaintiff had this disorder. In other words, Dr. Ferrel diagnosed Plaintiff with a disability *and did not tell his parent or legal guardian of the diagnosis*.

For this reason, it is perfectly understandable that Plaintiff did not register this disability with the University of Arkansas' Center for Educational Access (or "CEA" for short, a department with the UA that registers disabilities and administers accommodations for them),

Page 15

and thus never requested reasonable accommodations for them.

Judge Hendren himself stated that "[Plaintiff] need not have used any particular words to request accommodations, but must have said enough to invoke the 'interactive process' whereby he and UA would have worked out what accommodations were appropriate for what disability." In other words, Judge Hendren himself found that the Defendant is jointly responsible with the Plaintiff for finding sufficient accommodations. Therefore, the UA's failure to communicate the possibility of reasonable accommodations for the other two disabilities, besides just the Asperger Syndrome, constituted the same failure to accommodate as if they had simply failed to accommodate the Aspergers, because they knew about the other two and Plaintiff didn't. Judge Hendren erred in finding against Plaintiff in that regard.

### The District Court erred when it failed to incorporate the precedent of Knight v. State, 758 SW 2d 12, 14 (1988).

Judge Hendren claims that the reasonable accommodations Plaintiff requested would present an undue financial hardship on Defendant, as Defendant had no way of knowing if Plaintiff would act on his threats or not.

First of all, Judge Hendren himself admitted that a defense not raised in the Answer to the Complaint is effectively waived. He did this in Paragraph #34 of his memorandum opinion. The Defendant's answer did not include a declaration of "undue hardship" or "undue strain," or anything of the sort. Therefore, the District Court erred in entertaining this motion; it should have been stricken right along with the supposed failure to exhaust administrative remedies.

Second, if excusing supposedly threatening statements unelss there is proof of *intent* rather than recklessness is too difficult, then how do the prosecuting attorneys of this state do it?

Page 16

Appellate Case: 13-1105 Page: 16 Date Filed: 04/09/2013 Entry ID: 4022475 RESTRICTED

See *Knight v. State*, 758 SW 2d 12, 14 (1988) ("Statutes in other states impose criminal liability for threats made in reckless disregard of the risk of causing terror. Our state does not." internal citations omitted). So... you're saying that a prosecuting attorney who got his law degree from Defendant can prove someone guilty of *intent*, but the very school that taught him how to do that cannot? Riiiiiight.

For this reason, the judgment should be reversed.

### The District Court erred in considering the statements made at the AUJ hearing as "uncontestable" admissions.

At the AUJ hearing, Plaintiff had supposedly conceded that simply *sounding* threatening can *be* threatening. Using this alleged admission, Judge Hendren found that the email sent to Gearhart in June 2010 was threatening.

He apparently seems to think that, once a person has admitted to something in a case, he may never change his mind. What Hendren the Hypocrite fails to realize, however, is that he himself changed his mind on an issue of law in this case. In Document #23, he determined that an uncivil email was insufficient to allow the Defendants to bypass their duty to communicate in good faith. However, in Document #110, he used that exact same uncivil email to hold that Defendant was justified in not cooperating with Plaintiff in finding a mutually cost-effective location for Plaintiff's deposition.

Merely *sounding* threatening is not terroristic threatening. See *Michael Smith v. State of Arkansas*, 757 SW 2d 554, 556 (1988) ("[Terroristic threatening] is the communication of the threat with the *purpose* of terrorizing another. It is not necessary that the recipient of the threat actually be terrorized.") No threatened action, no terroristic threat. It's that simple.

Page 17

Appellate Case: 13-1105 Page: 17 Date Filed: 04/09/2013 Entry ID: 4022475 RESTRICTED

Therefore, the judgment should be reversed, after *de novo* review, on the grounds that there was insufficient evidence to support a finding of terroristic threatening, and thus, insufficient evidence to support a finding of direct threat.

### The District Court erred in failing to consider the reasonable accommodations provided by North Arkansas College.

Plaintiff attended North Arkansas College in Harrison for a few years, where the reasonable accommodations spoken of in Paragraph #2 of the Statement of the Case and Statement of Facts were implimented... and *worked like a charm*! If Plaintiff is a threat, why is Defendant and its staff the only ones who think so?

Despite Plaintiff having not one, but two witnesses to testify to this, the District Court refused to consider the evidence, falsely claiming that the evidence was never introduced.

If he had considered this evidence, he would have been forced to find in Plaintiff's favor on this issue, as the Defense offered absolutely no evidence whatsoever – not even the uncorroborated testimony of a single interested witness – to refute the testimony given, thus making the testimony Plaintiff offered automatically be a preponderance of the evidence.

The District Court clearly erred in finding that the accommodations requested were unreasonable. Therefore, the judgment should be reversed for this reason.

### The District Court erred in holding that a direct threat renders Plaintiff not "otherwise qualified."

The District Court applied the burden of proof to Defendant to prove that he is not a direct threat. This is a misallocation of the burden of proof. Plaintiff does not have to prove that he is not a threat; Defendant must prove that he is. See *EEOC v. Wal-Mart Stores, Inc.*, 477 F. 3d 561, 572 (8th Cir. 2007) ("[W]e now hold that the [defendant] bears the burden of proof, as the

Page 18

Appellate Case: 13-1105 Page: 18 Date Filed: 04/09/2013 Entry ID: 4022475 RESTRICTED

direct threat defense is an affirmative defense").

### The District Court erred in considering events regarding mere "difficulties" with dorm staff and teachers as evidence that it would ever go beyond mere difficulties.

There were some "difficulties" that Plaintiff supposedly experienced with teachers and dorm staff, to which Plaintiff overreacted. The District Court clearly erred in considering this as evidence that it wold ever escelate to mere difficulties. Lots of people have short levels of patience; that doesn't mean that they commit heinous crimes.

Plain and simple, the District Court erred in using these incidents, which never went beyond arguments, as evidence that Plaintiff is a "threat" to people.

### The District Court erred in holding that merely using swear words is sufficient to constitute a threat.

Plaintiff has the First Amendment right to curse. People curse all the time and don't get arrested for it. The mere use of swear words is not a terroristic threat. As stated before, to commit terroristic threatening, one must communicate a desire to inflict death or physical injury onto another. Simply insulting or cussing at someone does not communicate a desire to do that.

### Judge Hendren clearly was not even *paying attention* at trial; thus, the case should be reversed for evidence of bias.

Judge Hendren clearly had a bias in this case. His failure to actually pay attention to the trial proceedings (as established above), despite his insistence that the case be tried rather than resolved on summary judgment[1]. Both parties felt that the case could be resolved on summary judgment; it was Hendren and Hendren alone who insisted that the case be tried.

Even if the Judge *wanted* the case to be resolved on summary judgment, but that decision was overturned on appeal and a trial was rendered necessary, the Judge would still be required to

---

[1] For details, see Case No. 12-3567 in this Court.

actually *listen* to the testimony, but what excuse does he have when he himself was sole person who wanted a trial? He has none.

The only explanation is if he already had his mind made up about the case. If he already reached a decision, why didn't he grant a motion for summary judgment? Unless he was deliberately and maliciously trying to drive up the costs of the litigation for Plaintiff.

If that is what he wanted to do, then the case should be reversed just for that reason alone. If he has a bias in favor of the UA, he should have recused himself. Period.

This issue is reviewable *de novo*.

## CONCLUSION

Wherefore, premises considered, Plaintiff requests that the judgment be either reversed, or vacated and remanded with instructions to correct the errors spoken of in this brief.

It is so requested on this 7th day of April, 2013.

    /s/ David Stebbins
David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

## CERTIFICATE OF SERVICE

I, appellant David Stebbins, do hereby certify, under penalty of perjury, that a true and correct copy of this motion was served on Appellees by allowing them to view it on ECF.

    /s/ David Stebbins
David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

Page 20